## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Crim. No. 06-295 (RMC)** |
| | **:** | |
| **EDWARD EVERETT BROWN JR.** | **:** | |

### GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE OF
### THE DEFENDANT'S OTHER CRIMES AND BAD ACTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves the Court for an order permitting the United States to introduce evidence of other crimes and bad acts and submits the following in support.

### I. FACTUAL BACKGROUND

#### A. Indictment

The Indictment charges the defendant with one count of Bank Fraud, in violation of 18 U.S.C. § 1344, and two counts of Fictitious Instrument, in violation of 18 D.C. Code § 514. The charges stem from a scheme to defraud the Treasury Department Federal Credit Union of millions of dollars by defendant presenting two fictitious financial instruments to the credit union for negotiation, one in August 2005, the other in February 2006.

On July 18, 2005, the defendant applied for membership and opened an account with the Treasury Department Federal Credit Union. On July 20, 2005, defendant presented or caused to be presented a fictitious financial instrument labeled "Suntrust International Bill of Exchange" purportedly drawn on an account from Suntrust Bank and backed by the United States Treasury Department for $2.9 million dollars for deposit in defendant's credit union account. The routing and account numbers inscribed on the "Suntrust International Bill of Exchange" were from a closed account that defendant had at Suntrust Bank in 2003. In an attempt to get the Treasury

Department Federal Credit Union to negotiate the fictitious instrument, the defendant sent

correspondence and made telephone calls to the credit union.  Further, on August 5, 2005,

defendant returned to the credit union and provided a credit union employee with a deposit slip

for the  "Suntrust International Bill of Exchange" and requested that the fictitious instrument be

negotiated.  The credit union determined that the "Suntrust International Bill of Exchange" was

fictitious and did not negotiate the instrument.

On August 30, 2005, defendant was interviewed by special agents from the United States

Secret Service and Treasury Department's Office of Inspector General.  Defendant admitted to

producing and presenting the fictitious instrument to the credit union and said he was entitled to

use the funds by House Joint Resolution 192.  During this interview, the agents also asked

defendant about a prior incident where he used similar fictitious instruments to obtain several

automobiles from a dealership in Maryland in 2004.  Defendant admitted that he previously

spoke with two United States Secret Service Agents about the Maryland incident, but said the

agents did not tell him that it was illegal to use the instruments.  One of the agents explained to

defendant that the "Suntrust International Bill of Exchange" was a fraudulent instrument and

passing or presenting it was a violation of federal law.

On February 21, 2006, a Treasury Department Federal Credit Union employee contacted

one of the agents and informed him that defendant was again attempting to negotiate another

suspected fictitious financial instrument for 5.5 million dollars.  The instrument was written,

"Pay to the order of "Rev. Edward Everett Brown Jr."  The employee stated that defendant

requested that 1.8 million dollars of the funds from the instrument to be wired to a real estate

agency for the purchase of some property in Maryland.  The employee also said that defendant

was told to return on February 23, 2006 with wiring instruction for the 1.8 million dollars. The

instrument was determined to be a fictitious financial instrument. On February 23, 2006,

defendant returned to the credit union and (re)endorsed the fictitious financial instrument and

told the credit union employee that the funds on the fictitious financial instrument came from his

father who allegedly lived in London England. Defendant also instructed the employee to

transfer $1.8 million dollars of the $5.5 million dollars to a real estate firm located in Columbia,

Maryland through NRT Mid-Atlantic Title Service.[1] Defendant had given the real estate

company a counterfeit silver certificate.[2]

    B. **Prior and Subsequent Bad Acts**.

The government requests permission of the Court to introduce evidence of defendant's

prior and subsequent bad acts using similar fictitious financial instruments to open a bank

account and to purchase automobiles. In August 2004, defendant used several fictitious financial

instruments to obtain vehicles from a automobile dealership in Maryland. Likewise, in August

2006, defendant used three fictitious instruments to purchase three vehicles in Virginia.

Furthermore, in June 2005, defendant opened an account with PNC Bank and presented for

negotiation another fictitious instrument similar to the ones used herein. The government also

moves the Court to allow the government to present evidence regarding defendant's

---

[1] Defendant also provided the real estate company with another fictitious financial instrument, labeled a "Silver Surety" as part of the down payment for the property. Further, defendant claimed he forgot his wallet when he was supposed to pay for the inspection. The real estate company covered the cost of the home inspector, but have yet to be paid.

[2] In violation of 18 U.S.C. § 472.

conversations with law enforcement regarding the fictitious instruments.[3]

On August 8, 2004, defendant purchased two vehicles from a Maryland automobile dealership worth approximately forty thousand dollars ($40,000) and twenty-five thousand dollars ($25,000.00) using two fictitious financial instruments which purported to be negotiable financial instruments from Suntrust Bank. On August 10, 2004, defendant returned to the dealership in Laurel, Maryland and purchased a third vehicle using another fictitious financial instrument for twenty-three thousand dollars ($23,000.00). On September 10, 2004, Howard County Police Detectives of the Auto Theft Unit retrieved two of the vehicles from defendant's home; the third was later recovered.

On February 14, 2005, a Special Agent with the United States Secret Service and an Annapolis Maryland Police Detective interviewed defendant about the Maryland incident. Defendant said he was entitled to use the fictitious financial instruments because he was using his "private exemption to satisfy any accounting created." Defendant further explained that he negotiated the instruments pursuant to House Joint Resolution 192, June 5 1933 Public Policy. Defendant admitted he produced the instruments, stating he put his personal information onto a template he received off of the internet in order to complete the fictitious instruments. The agent asked defendant whether he would accept such an instrument from a customer at his business.[4] Defendant admitted that if a customer were to give him the same instruments he gave to the

---

[3] The earlier interview with defendant was discussed during defendant's August 2005 interview with agents, making the earlier interview "inextricably intertwined" with the facts of the current case. Therefore, the introduction of the 2004 interview does not to require a Fed. R. Evid. 404(b) analysis. However, in the abundance of precaution, the government requests permission for its introduction under either theory.

[4] Around this time, defendant had a business called Spiritual Oasis International.

dealership he would not accept it, because banks would not honor the instrument.  The agent told defendant that the passing of the fictitious instruments was a violation of law and punishable by incarceration.

In June 2005, the defendant opened a PNC Bank account and presented a fictitious financial instrument purporting to be worth 2.9 million dollars and entitled "International Bill of Exchange," #645 with the drawee of John W. Snow, Trustee.[5]  PNC Bank determined that the "International Bill of Exchange" was bogus and closed defendant's account prior to any transactions taking place.  Defendant was notified by PNC Bank that his "International Bill of Exchange" was not negotiable.  Regardless, defendant filed a U.C.C. Statement in West Virginia, listing himself as a secured party/creditor with PNC Bank as debtor.  Furthermore, on October 3, 2006, the defendant sent PNC Bank a document entitled, "Notice of International Commercial Claim in Admiralty Administrative Remedy" requesting payment of $1,020,823,100.00.  On November 22, 2006, defendant sent or caused to be sent to PNC Bank a "Contractual and Final Notice of Demand and Settlement for Closing of the Escrow" claiming that he was owed money by PNC Bank.

In August, 2006, defendant presented to an automobile dealership in Manassas.,Virginia, three separate fictitious financial instruments[6] similar to those he presented to the Treasury Department Federal Credit Union.  These fictitious instruments had purported values of $22,000, $32,500 and $24,500 on their face and were used to purchase three vehicles.  Those vehicles

---

[5]  Defendant also presented to PNC Bank an alleged passport from the "World Service Authority" and birth certificate and a "Maryland Silver Surety Bond."

[6]  Two other fictitious instruments were used to purchase vehicles by other individuals associated with defendant.

were subsequently recovered by the dealership.

The defendant's scheme to use fictitious instruments to obtain funds and/or property is the same in each instance. Defendant admitted that he produced at least four of the fictitious instruments[7] using a template. All of the fictitious instruments presented by defendant look similar–they look like checks with a routing number, account number and are signed. They have some reference that they are certified or backed by the Treasury Department or John W. Snow, Trustee.[8] Defendant also presented to PNC Bank a "Silver Surety" bonds to the Treasury Department Federal Credit Union as well as the real estate company in Maryland and PNC Bank.

## II. **ARGUMENT AND AUTHORITIES**

### A. **General Legal Principles**

The government serves notice that it will seek admission of the above-mentioned evidence which is arguably "extrinsic" to the charged offenses and thus subject to analysis under Fed.R.Evid. 404(b).[9]

The legal principles associated with Rule 404(b) are oft-stated and not subject to serious dispute.[10] One District Judge of this Courthouse provided the following concise summary:

---

[7] He admitted to law enforcement that he created the fictitious instruments used at in Maryland and the first fictitious instrument presented to the Treasury Department Federal Credit Union.

[8] John Snow, is Treasury Secretary and is the Managing Trustee of the United States Treasury.

[9] The government has provided discovery on all of the other crimes and bad acts addressed in this pleading. When the government estimated the length of the trial, it factored presentation of this evidence into the estimate.

[10] Rule 404(b) of the Federal Rules of Evidence governs the admission of other crimes, wrongs, or bad acts of a defendant. In relevant part, Rule 404(b) provides:

The D.C. Circuit has described Rule 404(b) as one of inclusion rather than exclusion, United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000), and has explained that it excludes only evidence that "is offered for the sole purpose of proving that a person's actions conformed to his or her character," United States v. Long, 328 F.3d 655, 661 (D.C. Cir.1993).[11]

To the extent that it is not already admissible due to being direct and substantive evidence of the charged offenses, evidence of other crimes, wrongs, or bad acts is admissible under Federal Rule of Evidence 404(b) if offered for a permissible purpose. Such permissible purposes include proof of intent, motive, opportunity, plan, knowledge, identity or absence of mistake or accident. United States v. Pindell, 336 F.3d 1049, 1056 (D.C. Cir.2003); United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.1990); see also United States v. Brazel, 102 F.3d 1120, 1153-54 (11th Cir.1997) (threats made by defendant to cooperating co-conspirator in holding cell was properly admissible under Rule 404(b) as evidence showing "consciousness of guilt"). The Court of Appeals for this Circuit has made clear, however, that Rule 404(b) merely defines the one *im*permissible purpose for bad act evidence; it does not define the set of permissible purposes for use of such evidence. Miller, 895 F.2d at 1436.[12]  . . . .

_____

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b).

[11]    These principles were recently ratified by this Circuit in United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005) (Roberts, J.):  "Federal Rule of Evidence 404(b), which governs the admission of evidence of other crimes or bad acts, 'is a rule of inclusion rather than exclusion.' [United States v. Bowie, 232 F.3d at 929.] The rule bars admission of such evidence when offered for the purpose of proving that a defendant acted in conformity with his character, but allows admission so long as the evidence is offered for any other relevant purpose.  Id."

[12]    The precise language of Miller could hardly be more explicit:  "[U]nder Rule 404(b), any purpose for which back acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove bad character."  United States v. Miller, 895 F.2d at 1436

The Court undertakes a two-part analysis to determine admissibility in the Rule 404(b) context.  See <u>Miller</u>, 895 F.2d at 1435. First, the Court considers whether the evidence is "probative of some material issue other than character."  <u>United States v. Clarke</u>, 24 F.3d 257, 264 (D.C. Cir.1994); Fed. R. Evid. 401.  Second, if the Court deems the evidence to be relevant, the Court should exclude the evidence only if probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; <u>Long</u>, 328 F.3d at 662.  In close cases, the rule tilts toward the admission of the uncharged conduct evidence.  See <u>United States v. Johnson</u>, 802 F.2d 1459, 1464 (D.C. Cir.1986) ("the balance should be generally struck in favor of admission when the evidence indicates a close relationship to the event charged") (quoting <u>United States v. Day</u>, 591 F.2d 861, 878 (D.C. Cir.1978)).  The D.C. Circuit has recognized that "Rule 404(b) evidence will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation, and the like." <u>United States v. Crowder</u>, 141 F.3d 1202, 1208 (D.C. Cir.1998) (en banc).  If evidence is ruled admissible, the trial court, when the defendant so requests, must give a limiting instruction. Fed. R. Evid. 105.  A trial court's Rule 404(b) admissibility determination is reviewed under an abuse of discretion standard. <u>Pindell</u>, 336 F.3d at 1056-57; [<u>United States v. Linares</u>, 367 F.3d, 941, 949 (D.C. Cir. 2004)].

<u>United States v.  Morrow</u>, 2005 WL 3159572 (D.D.C. April 7 2005) *3-4 [footnotes inserted].

As the above excerpt explains, evidence of acts which are part of, or "inextricably intertwined" with, a charged crime is direct proof of that crime and is not subject to Rule 404(b) analysis.  <u>United States v. Badru</u>, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996).  Although the Court of Appeals has occasionally criticized the bifurcation of evidence into that which is "inextricably intertwined" or "intrinsic" and that which is "extrinsic" (and thus subject to 404(b) analysis), <u>see</u> <u>United States v. Bowie</u>, 232 F.3d at 927, this bifurcation remains the law in this Circuit.  <u>See</u> <u>United States v. Alexander</u>, 331 F.3d 116 (D.C. Cir. 2003) (commenting on <u>Bowie</u>: "Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic distinction, <u>see</u> <u>Bowie</u>, 232 F.3d 927-29, we have nonetheless recognized that 'at least in a narrow range of circumstances . . . evidence can be "intrinsic to" the charged crime.'").

--------

(emphasis in original).

-8-

B. **Other Crimes or Bad Acts Evidence Admissible**

"Intent and knowledge are also well-established non-propensity purposes for admitting evidence of prior crimes or acts." United States v. Bowie, 232 F.3d at 930 (prior possession of counterfeit bills admissible to show intent and knowledge). This Court has permitted the admission of evidence of a defendant's prior fraudulent acts to show a defendant's specific intent to defraud. See United States v. Howard, 245 F. Supp. 2d 24, 30-31 (D.D.C. February 5, 2003)(evidence of other fraudulent acts admissible to intent to defraud). Here, defendant's conduct prior to and subsequent to his actions alleged in the Indictment are relevant to explaining his conduct, knowledge, motive and intent and lack of mistake or accident here. The pattern of defendant's activities demonstrates defendant's knowledge that the fictitious instruments presented to the credit union were false–a fact the government must prove–making the proffered evidence highly probative of a relevant fact, and, therefore, admissible.

Evidence that defendant used similar fictitious instruments to successfully purchase automobiles in 2004 show his motive, knowledge and intent to defraud for presenting the fictitious instruments to the TDFCU in 2005 and 2006. The fact that those cars were later confiscated by law enforcement demonstrates defendant's knowledge that the fictitious instruments were false and non-negotiable. Moreover, defendant's interview with law enforcement regarding the fictitious instruments in February 2005 show his knowledge that the instruments were bogus and his subsequent use of additional fictitious instruments prove his intent to defraud. See United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000). Evidence that defendant presented fictitious instruments on prior and subsequent occasions are relevant because it shows the unlikelihood that the instruments were passed by accident or mistake.

Defendant's subsequent presentation of additional fictitious instruments at a automobile dealership in Virginia in 2006 and at PNC Bank in 2005 establishes a pattern of conduct that helps to prove the defendant's criminal intent.  As the D.C. Circuit has explained:

> Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent...  What matters is that the evidence be relevant "to show a pattern of operation that would suggest intent" and that tends to undermine the defendant's innocent explanation.  Thus, this court has opined, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense."

United States v. Long, 328 F.3d 655, 661 (D.C. Cir. 2003) (citations omitted).  In this case, the bank fraud scheme at both PNC Bank and the credit union are strikingly similar – in both cases defendant opened a new account with the financial institution, then presented very similar fictitious instruments (each had routing and account numbers, labeled "Bill of Exchange").  Defendant then attempted to gain access to the purported funds.  When he did not get immediate access to those funds defendant made demands and/or threats to the financial institution.  Defendant continued to attempt to gain money from PNC Bank even after he was indicted in the instant matter.[13]  Therefore, evidence of the fictitious instruments presented to PNC Bank is admissible because it would  "show a pattern of operation that would suggest intent" in the charged fraud scheme.

For these reasons, the government respectfully requests permission to introduce evidence of these matters as "other acts evidence."

---

[13] On November 22, 2006, defendant submitted a demand to PNC Bank for money.

WHEREFORE, the government respectfully requests that the Court grant this Motion.  A proposed order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Diane G. Lucas, D.C. Bar #443610
Assistant United States Attorney
555 Fourth Street, N.W., Fifth Floor
Washington, DC 20530
(202) 514-7912

<u>Certificate of Service</u>

I hereby certify that on February 5, 2006, a copy of this pleading was served by electronic mail upon Jonathan Jeffress, Esquire., Federal Public Defender's Office.

_____
Diane G. Lucas
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **5.** | **:** | **Crim. No. 06-295 (RMC)** |
| | **:** | |
| | **:** | |
| **EDWARD EVERETT BROWN,  JR.** | **:** | |

**<u>ORDER</u>**

Upon consideration of the government's  Motion to Introduce Evidence of the

Defendant's Other Crimes and Bad Acts, and for good cause shown, the Motion is hereby

granted.

_____
Rosemary M. Collyer
United States District Judge

cc:    Diane Lucas, AUSA
        Jonathan Jeffress, Esquire