IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-295 (TFH) |
| ) | |
| EDWARD E. BROWN, JR., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT EDWARD E. BROWN, JR.'S
OPPOSITION TO GOVERNMENT'S SUPPLEMENTAL
MOTION TO ADMIT EVIDENCE UNDER RULE 404(B)**

Defendant, Edward Brown, through counsel, respectfully submits this Opposition to the Supplemental Motion of the Government To Introduce Evidence Under Rule 404(b). The government's motion seeks to supplement the government's already extensive 404(b) evidence with two additional categories of conduct: (1) evidence that defendant allegedly bounced a check during a real estate transaction; (2) evidence that he told a home inspector for the real estate transaction that he "forgot his wallet" and was unable to pay the home inspection fee. The Court should exclude the alleged evidence because (1) it is pure propensity evidence offered to prove defendant's allegedly bad character, and (2) even if relevant for a purpose other than criminal propensity, its probative value is substantially outweighed by the danger of unfair prejudice to defendant.

**DISCUSSION**

A.   **The Government's Additional Evidence Is Not Admissible As "Inextricably Intertwined" With The Charged Offenses.**

The government attempts first to admit its new categories of evidence as "inextricably

intertwined" with the charged offenses. It is worth noting that the Indictment in this case, a five page document, does not even mention the real estate transaction that the government now claims to be "inextricably intertwined" with the charged offenses.[1] The Indictment alleges three crimes in this case, but all allegedly occurred at the Treasury Department Federal Credit Union in Washington, D.C.; not during a real estate transaction in Maryland.

In light of the above, the government's attempt to admit the categories of uncharged conduct as "inextricably intertwined" with the charged offenses is precluded by controlling D.C. Circuit authority. In United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000), the D.C. Circuit was sharply critical of the government's effort to bypass the requirements of Rule 404(b) by labeling evidence "inextricably intertwined" with the charged offenses, noting that "the only consequences of labeling evidence 'intrinsic' are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction." Id. at 927-28. The court also recognized the "danger that finding evidence 'inextricably intertwined' may too easily slip from analysis to mere conclusion." Id. at 927-28. The court specifically rejected as "overbroad" formulations by other circuits that consider evidence "'intrinsic'" if it would "'complete the story'" or "'explain the circumstances,'" stating that "all relevant prosecution evidence explains the crime or completes the story." Id. at 929. Given these concerns, the D.C. Circuit construed the "inextricably intertwined" doctrine as applying only "in a narrow range of circumstances," such as to "an act that is part of the charged offense" or "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the

---

[1] In this regard, the Indictment states only that Mr. Brown provided the Treasury Department Federal Credit Union "wiring instructions for a portion of the purported funds from the fictitious instrument to a title company in Maryland." Indictment, ¶ 14.

commission of the charged crime." Id. (emphasis added); see also United States v. Alexander, 331 F.3d 116, 125-26 (D.C. Cir. 2003) (confirming "narrow" scope of intrinsic evidence exception to Rule 404(b)).

In its initial 404(b) pleading (incorporated by reference in its supplemental motion), the government relies on cases that simply confirm the narrow scope of the "inextricably intertwined" doctrine in the D.C. Circuit. For instance, in United States v. Badru, 97 F.3d 1471 (D.C. Cir. 1996), where the defendants were charged with conspiracy to distribute heroin, the court held that evidence of the defendants' involvement in smuggling the heroin that they distributed was not "other crimes" evidence but merely direct proof of acts in furtherance of the charged conspiracy, because defendants "had to obtain heroin from a source before the y could distribute it." Id. at 1474-75; see also United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir. 1992) (where defendant was charged with possession of narcotics with intent to distribute, evidence that defendant watched his co-defendant sell the narcotics at issue was not "other crimes" evidence but merely "an intrinsic part of the witness' account of the circumstances surrounding the offense").

These controlling standards preclude the admission of any of the evidence alleged in the supplemental 404(b) Notice as "inextricably intertwined" with the charged offenses. This case is about an alleged fraud at a bank, not an alleged fraud during a real estate transaction in Maryland. The government's efforts notwithstanding, the Indictment in this case cannot plausibly be described as setting forth a "scheme [by defendant] not to expend any of his own money for the purchase of [a] property." Gov. Supp. Mot. at 3. That formulation proves far too much. Indeed, under the government's approach, any other instance of a defendant's alleged dishonesty

3

regarding money would be "inextricably intertwined" with the fraud scheme, as it, too, would show his desire "not to expend any of his own money."

Based upon defense counsel's recollection, the Court previously admitted evidence regarding the real estate transaction under Rule 404(b) on the basis that it may prove Mr. Brown's "motive" for the alleged bank fraud. The Court's previous ruling, however, reached the outermost limit of the relevance and admissibility of the real estate evidence in this case. In short, if the government seeks to try Mr. Brown for fraud involving his attempted purchase of real estate, it may try and do so--in a separate case, in Maryland. Its additional evidence is not "inextricably intertwined" with the charges in this case.

**B.     The Court Should Exclude The Evidence Alleged In The Supplemental 404(b) Notice Pursuant To Federal Rules Of Evidence 404(b) And 403.**

    **1.     Applicable Legal Standards**

Under Rule 404(b), "other acts" evidence "is <u>not</u> admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (emphasis added).[2] "The threshold inquiry a court must make before admitting similar acts evidence under

---

[2]     Rule 404(b) provides in full:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of an y such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). These principles are based on the presumption of innocence and the recognition that "[i]t is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'" United States v. Foskey, 636 F.2d 517, 523 (D.C. Cir. 1980) (citation omitted). "The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." United States v. Daniels, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

Although the D.C. Circuit has described Rule 404(b) as a rule of inclusion rather than exclusion, Bowie, 232 F.3d at 929, it has also "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." United States v. Nicely, 922 F.2d 850, 856 (D.C. Cir. 1991). To satisfy Rule 404(b), the evidence of other crimes or acts must be (a) relevant under Fed. R. Evid. 401, (b) related to "a matter in issue other than the defendant's character or propensity to commit crime," and (c) "sufficient to support a jury finding that the defendant committed the other crime or act." Bowie, 232 F.3d at 930. "[S]uch evidence is never admissible unless it is 'necessary' to establish a material fact such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Shelton, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (footnote omitted). Even if the evidence at issue is offered for a legitimate, nonpropensity purpose under Rule 404(b), it should still be excluded pursuant to Rule 403 if its probative value is "substantially

5

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. For the purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). The D.C. Circuit has recognized that there are "unique dangers of unfair prejudice associated with evidence of other bad acts," United States v. Lavelle, 751 F.2d 1266, 1275 (D.C. Cir. 1985), and that such evidence creates "enormous danger of prejudice to the defendant" because "juries are prone to draw illogical and incorrect inferences from such evidence." Shelton, 628 F.2d at 56; see also Bowie, 232 F.3d at 931 ("Evidence of other crimes or acts having a legitimate nonpropensity purpose undoubtedly may contain the seeds of a forbidden propensity inference" and thus ma y be barred under Rule 403).

     Courts should also exclude "other acts" evidence pursuant to Rule 403 if its introduction will create a "trial within a trial," United States v. Aboumoussallem, 726 F.2d 906, 912 (2d Cir. 1984) (quotation marks omitted), or if the government is likely to spend more time "dealing with alleged wrongful conduct not covered by the indictment than . . . dealing with the incidents" for which the defendant is charged. United States v. Jones, 570 F.2d 765, 769 (8th Cir. 1978); see also United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir. 1980) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.").

**2.      The Other Acts Evidence Is Not Probative Of Any Material Issue Other Than Character.**

Here, the government's motion seeks to supplement the government's already extensive 404(b) evidence[3] with two additional categories of alleged 404(b) evidence: (1) evidence that defendant bounced an alleged check during a real estate transaction; (2) evidence that defendant told a home inspector he forgot his wallet and therefore could not pay for a home inspection. These categories are addressed in turn.

**a.      The Alleged Bounced Check.**

On the first issue, the Court has already ruled that the proposed real estate transaction is Rule 404(b) evidence in that it may have supplied Mr. Brown with the "motive" for the February 2006 attempted transaction. By defense counsel's recollection, it was under this theory that the government was permitted to offer the testimony of the settlement agent at the first trial.

By seeking to admit also the testimony of the real estate agent, however, as well as Government's Exhibit 22, the government goes beyond proving motive and into the impermissible area of attempting simply to show that Mr. Brown is a "con man." Neither the real estate agent's testimony nor Exhibit 22 are "necessary" or even proper for proving Mr. Brown's alleged motive. Instead, this is impermissible character evidence that can only be justified under an implausibly broad reading of the indictment, i.e., that it charges a scheme "not to spend money."

---

[3]      By undersigned counsel's estimation, the government's presentation of its 404(b) evidence at the first trial consumed approximately 50% of the trial, which lasted three days.

    **b.**  **The Forgotten Wallet**.

  Even if the government were permitted to offer the bounced check into evidence, the evidence concerning the forgotten wallet is altogether improper.  Again, the Indictment does not remotely allege a "scheme [by defendant] not to expend any of his own money for [a] property." Gov. Supp. Mot. at 3.  The fact that Mr. Brown allegedly welched on a $700 debt during a real estate transaction does not even pass the test of relevance.  See Fed. R. Evid. 401.  This is classic evidence of a "propensity" to lie and/ or commit crimes, and it should not be admitted.

  As an additional ground of admission, the government refers to the fact that the home inspection payment is fair game because Mr. Brown testified at his first trial.  This is a *non sequitur*.  The defendant has not decided whether he will testify at the upcoming trial and could not possibly "open any doors" to additional government evidence–which would be presented in the government's rebuttal case, in any event--until he does.  Moreover, the government may not prove defendant's truthfulness or untruthfulness by extrinsic evidence.  See Fed. R. Evid. 608(b) ("Specific instances of conduct of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence").  Thus, even if Mr. Brown did testify, the government might be permitted to inquire into the matter on cross-examination, but it clearly could not address the issue through extrinsic evidence such as the testimony of the real estate agent regarding the home inspection fee.  See id.

  Finally, evidence concerning the lost wallet is unduly prejudicial and will surely create a create a "trial within a trial." Aboumoussallem, 726 F.2d at 912.  If the government is allowed down this road, the defense may well have to put on its own witnesses (Mr. Brown's wife and children?) concerning whether Mr. Brown did indeed leave his wallet at home that day.  Such

testimony--on both sides--will distract and confuse the jury, waste time, and unduly prejudice Mr. Brown.

## CONCLUSION

For the foregoing reasons, defendant Edward Brown, Jr. requests that the Court prohibit the government from introducing other crimes evidence under Fed. R. Evid. 404(b).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W., #550
Washington, D.C. 20004
(202) 208-7500