UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 06-295 (TFH) |
| | : | |
| EDWARD EVERETT BROWN JR. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby opposes defendant's Motion for a New Trial. In support of said Opposition, the government presents the following.[1]

**INTRODUCTION**

On August 4, 2007, Defendant, Edward Everett Brown Jr. was found guilty of one count of bank fraud, in violation of 18 U.S.C. § 1344 and two counts of fictitious obligation, in violation of 18 U.S.C. § 514. On August 12, 2007, the defendant moved for a new trial on the ground that this Court misapplied Fed. R. Evid. 404(b) and admitted unduly prejudicial "other crimes" evidence. See Defendant's Motion at ¶2. This argument lacks merit because the Court correctly ruled that the challenged evidence was probative of the key issues contested at trial–the defendant's knowledge and intent. In any event, the Court carefully acted to mitigate any undue prejudice by giving the appropriate limiting instructions as requested by the defendant during trial. Further, the Court properly gave a final instruction to the jury as to its limited use of the

---

[1] The government would incorporate as if fully rewritten herein, its Motions to Introduce Evidence of Defendant's Other Bad Acts or Crimes and its oral arguments to the Court regarding the issues raised in defendant's instant Motion.

"other bad acts" evidence. See Document No. 61 at 18-19.[2]  Defendant's motion is without merit and must be denied.

## STANDARD OF REVIEW

Pursuant to Fed. R. Crim. Proc. 33(a), a motion for a new trial may be granted if the "interest of justice" is served.[3]  Whether to grant a new trial is "committed to the sound discretion of the trial judge, [and is subject to reversal] only for abuse of discretion or misapplication of the law." United States v. Reese, 561 F.2d 894, 902 (D.C. Cir. 1977).  The defendant has the burden of proof.  Id.  "Furthermore, even if defendant demonstrates that an error occurred, a new trial is not warranted unless defendant shows that it so influenced the jury that a substantial right of defendant was affected." United States v. Simmons, 431 F. Supp. 38, 45 (D.D.C. 2006)(citations omitted).

## ARGUMENT

A. <u>Other Bad Acts Evidence Properly Admitted</u>

At trial, the Court admitted evidence of defendant's other bad acts where he attempted to obtain funds or property using similar fictitious financial obligations as those alleged in the Indictment.  That evidence included:  1) the defendant's purchase of three cars from CarMax in 2004 using three fictitious obligations; 2) the defendant's opening of a bank account at PNC Bank in June 2005 using a fictitious obligation; and 3) the defendant's use of a fictitious

---

[2]  "Document No." refers to the docketing number assigned to a document in the instant matter.

[3]  While the defendant's motion does not state under which rule he files his motion for a new trial, the government assumes he is moving pursuant to Fed. R. Crim. Pro. 33 since he did not argue for a judgment of acquittal in his motion.

obligation for the earnest money deposit to purchase a property in Maryland.[4]  In addition, the Court allowed the government to introduce evidence of the defendant's discussions with his real estate agent regarding the purchase of the property and his failure to pay for a home inspection of the property he was trying to obtain using fictitious obligations.  The government notified the Court and the defendant of its intent to introduce other bad acts evidence at trial.  The Court conducted an analysis of the evidence under Fed. R. Evid. 404(b) and found that the evidence was offered to prove the defendant's motive, intent, knowledge and lack of mistake or accident and was not introduced to show the defendant's character.  Further, the Court balanced the considerations of Fed. R. Evid. 403, and found that the probative value of the evidence outweighed the possible prejudice to the defendant.  In addition, the Court gave the appropriate limiting instructions during the trial and in the final instructions.

1. **Intrinsic v. Extrinsic Evidence Analysis Moot**

In his Motion, the defendant complains that the government argued that the bad acts evidence relating to the defendant's attempted purchase of the property in Maryland was "inextricably intertwined" with the crimes charged in the Indictment.  See Motion at ¶s 3-7.  While the government argued that the evidence pertaining to the real estate deal was "intrinsic" to the defendant's scheme, the government gave the defendant notice of that evidence pursuant to Fed. R. Evid. 404(b) and the Court gave limiting instructions pursuant to a request by the

---

[4] The defendant tried to have funds wired to the settlement company from the fictitious obligation referenced in Court 3 of the Indictment, when he was unable to persuade the settlement company to accept a fictitious obligation in settlement of the contract for the sale of a $1.8 million dollar property.

defendant.[5] Thus, the defendant's argument as to whether the evidence relating to the real estate deal was "intrinsic" or "extrinsic" to the defendant's scheme is moot because the Court treated the evidence as if it were 404(b) evidence. "If the so-called 'intrinsic' act is indeed part of the crime charged, evidence of it will, by definition, always satisfy Rule 404(b)." United States v. Alexander, 331 F.116, 126, N. 13 (D.C. Cir. 2003), citing, United State v. Bowie, 232, F.3d 923, 927 (D.C. Cir. 2000). "So far as we can tell, the only consequences of labeling evidence "intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request." United States v. Bowie, 232 F.3d at 927. Because the government followed the notice requirements of Rule 404(b) and the Court analyzed the challenged evidence under Rule 404(b), the defendant has no meritorious claim for relief.[6]

---

[5] The government argued that the real estate deal was part of the defendant's overall scheme and showed motive. Indeed, in paragraph 14 of the Indictment, the government stated that "[i]t was part of the scheme and artifice that on or about February 23, 2006, EDWARD EVERETT BROWN JR., returned to a Treasury Department Federal Credit Union branch in order to insure the negotiation of the fictitious financial instrument described in paragraph 13 .... and provide a deposit slip for the fictitious financial instrument and wiring instructions for a portion of the purported funds from the fictitious financial instrument to a title company in Maryland." As the Court in United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000) noted, ". . .evidence necessary to complete a story–for instance by furnishing a motive or establishing identity–typically has a non-propensity purpose and is admissible under Rule 404(b)." Id. at 929.

[6] Nonetheless, the defendant mistakenly claims that the D.C. Circuit "rejected the 'inextricably intertwined' test as unhelpful and circular." See Motion at ¶ 6. The court in Bowie kept the distinction between intrinsic and extrinsic evidence, however, it did reject the broad "complete the story" rationale for the introduction of other bad acts evidence without a Fed. R. Evid. 404(b) anayslis. The court in Bowie wrote, ". . . we are confident that there is no general "complete the story" or "explain the circumstance" exception to Rule 404(b) in this Circuit." Id. at 929.

2. **<u>Other Bad Acts Evidence Not Admitted to Show Defendant's Character</u>**

"[A]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance'–for the purpose of proving that a person's actions conformed to his character." <u>Id</u>. at 929-930. Here, the Court found the evidence of the defendant's other bad acts were admissible because they did not touch solely on the defendant's character, but were evidence of the defendant's motive, intent, knowledge and lack of mistake or accident.

As the parties noted in their opening and closing arguments, the disputed issues before the jury related to the defendant's state of mind. What was the defendant's motive in passing the fictitious obligations? What was the state of his knowledge when he passed the fictitious obligations? What was his intent? Did he intend to defraud the credit union of its funds? Did the defendant have a good faith belief that what he was doing was legal? As the Court property found, evidence of prior bad acts by the defendant, including that the defendant previously tried to use similar fictitious obligations to get money or property; that he had been successful in gaining property in exchange for the fictitious obligations; and that he had been told by law enforcement that the fictitious obligations were bogus and his actions in presenting them were illegal, were all relevant to show the defendant's state of mind and negate a good faith defense.[7]

Defendant's argument that the evidence relating to CarMax was "propensity" evidence is without merit. <u>See</u> Defendant's Motion at ¶ 8. The CarMax evidence was relevant for several reasons. First, evidence that the defendant was successful in obtaining cars using similar

---

[7] The defendant was also informed by PNC Bank's general counsel's office that the materials he submitted to the bank imposed no obligation on the bank and did not have any legal meaning.

fictitious obligation showed that the fictitious obligations looked like genuine financial instruments-an element of the fictitious obligation charges. This was important evidence because defense counsel implied through his questioning that the fictitious obligations were unlike genuine financial instruments and therefore, no one would have actually accepted them as negotiable. Second, the evidence also showed the defendant's intent and motive to gain property or money using fictitious obligations. The scheme worked before, so he tried again. Lastly, evidence that law enforcement told the defendant that the fictitious obligations he passed at CarMax were worthless and against the law demonstrated the defendant's knowledge, intent to defraud and lack of good faith when he presented the fictitious instruments to the Treasury Department Federal Credit Union. The fact that the defendant later denied to Agent Blake that the earlier agents told him it was illegal to pass fictitious obligations, showed the defendant's intent to defraud and his knowledge.

Likewise, evidence that the defendant tried the same scheme previously at PNC Bank using a similar fictitious obligation was relevant to show the defendant's intent, motive and lack of mistake. The defendant argued at trial that the bankers at the Treasury Department Federal Credit Union did not tell the defendant that the fictitious obligations were worthless, therefore, his actions were not intentional or knowing. Evidence that an attorney at PNC Bank wrote to the defendant and informed him that the fictitious obligation he presented to PNC Bank was worthless negates his argument that bankers did not tell him that the bogus obligations were worthless which shows his knowledge.

Evidence about the real estate deal showed the defendant's intent to defraud and his

6

motive to pass the second fictitious obligation at the Treasury Department Federal Credit Union.[8] The defendant tried to get the property without using his own money by giving the real estate agent a bogus fictitious obligation as earnest money and forgetting his wallet to pay for the home inspection.[9] He also tried to get the settlement company to accept a fictitious obligation allegedly worth more than the property and provide him with the remaining funds. All of this evidence shows the defendant's scheme and motive in pursuing funds from the second fictitious obligation. While it may touch upon the defendant's character, the purpose for its introduction was not "to demonstrate the bad character of the defendant." See Defendant's Motion at ¶ 7.

B. **The Court Considered Fed. R. Evid. 403**

The Court considered Fed. R. Evid. 403 and balanced the probative value of the other bad acts evidence and whether it was outweighed by any undue prejudice to the defendant. Given the focus of the trial on the defendant's state of mind and knowledge, the Court did not abuse its discretion in finding that the evidence was not unduly prejudicial. Moreover, while there were a number of witnesses who testified relating to the Fed. R. Evid. 404(b) evidence, their testimony was short compared to the two credit union employees and law enforcement agent who discussed his interview with the defendant after the first draft was presented to the Treasury Department

---

[8] This evidence was direct evidence ("intrinsic") of the defendant's motive to pass the second fictitious obligation and part of his scheme to defraud.

[9] The defendant told the real estate agent the money for the property was coming from a church trust and he led the Treasury Department Federal Credit Union employee to believe the money was coming from a "trust" set up by his father. Neither of which corroborated the defendant's explanation to the jury that he had a good faith belief that the money backing the fictitious obligations he passed came from the U.S. Treasury.

Federal Credit Union.[10] Since the defendant's intent and knowledge were key issues in the case and the Rule 404(b) evidence was highly probative of those issues, the Court did not err is its admission.

WHEREFORE, the government respectfully requests that the Court deny the Defendant's Motion for a New Trial. A proposed order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Diane G. Lucas, D.C. Bar #443610
Assistant United States Attorney
555 Fourth Street, N.W., Fourth Floor
Washington, DC 20530
(202) 514-7912

Certificate of Service

I hereby certify that on August 17, 2007, a copy of this pleading was served by electronic mail upon Edward Sussman, Esquire.

_____
Diane G. Lucas
Assistant United States Attorney

---

[10] If one considers the real estate witnesses providing evidence that was "intrinsic" to the case, then there were only three short witnesses regarding the Fed. R. Evid. 404(b) evidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No. 06-295 (TFH)** |
| | : | |
| | : | |
| **EDWARD EVERETT BROWN, JR.** | : | |

## **ORDER**

Upon consideration of the defendant's Motion for a New Trial, the government's opposition, the Motion is hereby denied.

_____
Thomas F. Hogan
Chief, United States District Judge

cc:   Diane Lucas, AUSA
      Edward Sussman, Esquire