UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :

           v.                     :        CR. NO 06-295 (TFH)

EDWARD EVERETT BROWN, JR.         :

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Following his conviction for one count of bank fraud and two counts of presenting fictitious instruments, the defendant will appear before this honorable court for sentencing on February 27, 2008. Counsel and the defendant respectfully request that the court consider the following memorandum in imposing sentence in this matter.

1. Having presided over two trials, the court is well familiar with the facts that led to Mr. Brown's conviction. On two separate occasions, Mr. Brown appeared at the Treasury Department Credit Union and presented "Bills of Exchange" drawn on the U.S. Treasury Department. Despite meeting the "similitude" requirements of the applicable statute, the instruments were bizarre in just about every way. Documents that accompanied the instruments were even more unusual. Experienced bankers testified that they had never seen anything like this before and that they had no intention of ever presenting the instruments for payment to the Treasury Department or providing any funds to Mr. Brown. The whole exercise was rendered even more bizarre by the defendant's representation that the instruments had to pass through a closed Suntrust bank account. Even law enforcement officers, who are rarely forgiving, seemed to conclude initially that Mr. Brown's presentment of the first bill of exchange was too ridiculous

to merit arrest and prosecution.  After all, an attempt to cash a fraudulent $2.9 million dollar instrument is generally a fairly serious matter.  When the defendant persisted by presenting a second bill of exchange, having a face value of $5.5 million, law enforcement apparently had enough.  Mr. Brown was indicted and arrested.

    2. Even after his arrest, the government seemed to view the matter with appropriate perspective.  While counsel did not represent the defendant until prior to the second trial, it is counsel's understanding that, following mis-trial of this case,  Mr. Brown was offered an opportunity to plead guilty and obtain a probationary sentence.  Likely, that offer was the product of a government conclusion that the defendant was more of a nuisance than a serious criminal threat.  Counsel believes that still remains the case.

    3. For sentencing guideline purposes, the calculations are fairly simple.  The face value of the two bills of exchange are added together, and a guideline range established.  That range, given Mr. Brown's lack of any criminal history, is 70 to 87 months.  Since recent Supreme Court decisions provide for a sentencing methodology that begins with guideline determination, that matter will be addressed first.

    4. Significantly, Application Note 19, U.S.S.G. §2B1.1(iv)iii ©) provides that a downward departure may be warranted when "the computed offense level substantially overstates the seriousness of the offense."  Since the guidelines reference numerous upward departures, and few that will reduce a sentence, such a mention should be taken seriously by the court.  Most of the decided cases concerning this provision have resulted from the defense claims that since loss was impossible in government *sting* operations, potential harm is exaggerated.  This argument has unanimously been rejected by the courts and is not being asserted here.  See United States v.

Wills, 882 F.2d 823 (9th Cir. 1997). What is being advanced is a claim that the bills of exchange were, by their very nature, nothing that could be taken seriously by a professional banker. There was little doubt from the evidence that none of the bank managers ever considered paying Mr. Brown a dime. Nor did they ever think about presenting these bills of exchange to the Treasury Department. The dealings that ensued appeared to be a combination of law enforcement cementing its case and bank staff making sport of the defendant. It must be recalled that the $5.5 million instrument was presented *after* Treasury Department agents had consulted with the same credit union and visited the defendant. Consequently, the chance of Mr. Brown actually getting any money was less than nil.

     5. Although the case law makes it clear that the face amount of the instruments begins the guideline calculations, a number of courts have looked to the "financial reality" in departing downward from the guideline calculations. This analysis gives life to the Application Note that recognizes overstatement of loss as a basis for a sentence reduction. In United States v. McBride, 362 F.3d 360 (6th Cir. 2004) the, court in departing downward, cited a district court opinion in United States v. Roen, 279 F. Supp. 2d 986 (E.D. Wis. 2003). The Roen court concluded that a downward departure was warranted "where a defendant devises an ambitious scheme obviously doomed to fail and which causes little or no actual loss, it may be unfair to sentence based on the intended (but highly improbable) loss from the [sentencing] table." See also United States v. Joetzki, 952 F.2d 1090 (9th Cir. 1991) for support the availability of a departure to address this economic reality.

     6. In sum, the defendant believes that the economic realities of the case support a significant downward departure. Mr. Brown respectfully submits that the sentencing process

should begin from a guideline calculation that is *significantly* lower than the range computed by the probation office.

    7. Once the guidelines have been calculated, the court is required to consider the factors enumerated in 18 U.S.C. §3553(a). It should be noted that under the Supreme Court's recent decision in United States v. Gall v. United States, 128 S.Ct. 586 (2007), it was made clear that sentences outside the established guidelines are not presumptively unreasonable. Consequently, the defendant contends that the guidelines should receive no more weight than each of the statutory factors. To do otherwise, would allow an advisory system to come too close to the former mandatory and unconstitutional guidelines.

    8. Application of the statutory factors to Mr. Brown would suggest that little if any incarceration is necessary. At the age of 50, this represents his first criminal conviction. He has maintained employment, attended college, and been married for twenty years. During that time he has provided for his two daughters, who still need his financial and emotional support. There is little benefit that he (or the community) can derive from his incarceration. Counsel reminds the court that the statute mandates that the court not impose a sentence that is greater than necessary to fulfill its purposes.

    9. While the reasons for the defendant's involvement in this activity, and his perseverance in continuing remains somewhat of a mystery to counsel, it was clear that Mr. Brown and his family were experiencing shaky financial times. The family had lost their home to foreclosure and eventually were living in residential hotels. The inability to provide for wife and family can certainly make a man engage in aberrant behavior. How attractive it must be to find a panacea for one's financial problems! How difficult it must be to give up the notion that things can be

dramatically improved! Whatever motivated the defendant, it was a clear departure from a lifetime of law abiding and productive behavior.

    10. While it might be said that a 50 year old man should know better. It could be said with equal conviction that a man like Mr. Brown deserves a chance. Mandatory guidelines have taken the individuality out of sentencing; providing few opportunities for real leniency and compassion. Many people have simply been crushed by their ironclad operation. There have been few second chances. Counsel believes that the facts of the offense and the history of the defendant merit the type of second chance that the law now permits.

    11. Counsel and the defendant thank the court in advance for its consideration in this matter.

    Very truly yours,

    _____
    Edward C. Sussman No. 174623
    Counsel for Defendant Brown
    Suite 900 - South Building
    601 Pennsylvania Avenue N.W.
    Washington, D.C.  20004
    (202) 737-7110

## CERTIFICATE OF SERVICE

_____ I HEREBY CERTIFY THAT a copy of the foregoing was served electronically on all interested parties this 20th day of February, 2008.

    _____
    Edward C. Sussman