UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. CR-06-295 (TFH) |
| | : | |
| EDWARD EVERETT BROWN, JR., | : | |
| | : | |
| Defendant. | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.     BACKGROUND**

On August 3, 2007, defendant Edward Everett Brown, Jr., was found guilty by jury of one count of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of fictitious obligation, in violation of 18 U.S.C. § 514.  In summary, defendant tried to negotiate two fictitious United States Treasury obligations totaling more than $8 million.  Defendant's excuse was the patently false theory that New Deal-era legislation gave him the right to call more than $8 million of taxpayers' dollars his own.  In more detail, the evidence at trial showed that on July 18, 2005, defendant applied for membership and opened an account with the Treasury Department Federal Credit Union ("TDFCU").  On July 20, 2005, defendant presented to the TDFCU a $2.9 million dollar fictitious financial instrument for negotiation.  This fictitious instrument was purportedly drawn on an account from SunTrust Bank, and backed by the United States Treasury.  The routing and account information on the fictitious instrument were from defendant's closed SunTrust account.  An audio and video tape of two conversations between defendant and TDFCU employees demonstrated defendant's efforts to get the fictitious obligation negotiated.

In August 2005, defendant was interviewed by law enforcement agents. At that time, defendant admitted to producing and presenting the fictitious instrument, claiming that he was entitled to the funds through Joint House Resolution 192. Those agents informed defendant that it was against the law to attempt to present or pass a fictitious obligation. In addition, defendant admitted to the agents that he had been interviewed previously by two United States Secret Service Agents in conjunction with his use of similar fictitious obligations to purchase vehicles in Maryland in 2004. Defendant, however, denied knowing that it was against the law to use fictitious obligations, or that he had been so informed by the United States Secret Service Agents.

On February 21, 2007, the defendant returned to the TDFCU and attempted to present another fictitious obligation for negotiation. This fictitious obligation was for $5.5 million dollars and purportedly backed by the United States Treasury. Defendant requested that $1.8 million of the funds be wired to a settlement company in Maryland for a real estate closing. The jury saw a video recording of defendant's return to the TDFCU on February 23, 2006 wherein he provided a credit union employee with wiring instructions for the purported funds. Defendant told the employee that the funds were coming from his father, who lived in England.

## II.     SENTENCING CALCULATION

### A     Statutory Maximum

The defendant was found guilty of one count of bank fraud, in violation of 18 U.S.C. § 1344. The maximum sentence for this offense is thirty years imprisonment, a fine of $1,000,000, a $100 special assessment, and a five-year term of supervised release. See 18 U.S.C. §§ 1344, 3013(a)(2)(A) and 3583(b)(1).

The defendant was also found guilty of two counts of fictitious obligation, in violation of

18 U.S.C. § 514. The maximum sentence for each of these two offenses is twenty-five years imprisonment, a fine of $250,000, a $100 special assessment, and a five-year term of supervised release. See 18 U.S.C. §§ 514, 3013(a)(2)(A) and 3583(b)(1).

      **B.**      **Sentencing Guideline Calculation**

The Guidelines calculations utilized in the Presentence Report ("PSR"), correctly calculates the defendant's total offense level at 27.[1] See PSR ¶ 21. This includes the base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1), and a twenty-level enhancement for the intended loss of more than $8.4 million dollars pursuant to U.S.S.G. § 2B1.1(1)(b)(K). The PSR also has calculated correctly the defendant's criminal history as Category I. See PSR ¶ 24. Therefore, the guideline range for defendant is correctly calculated in the PSR as 70-87 months. See PSR ¶ 48.

      **III.**      **SENTENCING RECOMMENDATION**

As the Court is well-aware, the recommended sentence set forth in the Sentencing Guidelines is but one factor this court must consider in determining an appropriate sentence. The Court must also consider the factors set forth at 18 U.S.C. § 3553.[2] If the Court were to depart

---

[1] The United States notes that if the Court were to add the intended loss figures from the other fictitious obligation evidence presented at trial as "relevant conduct" under 1B1.3 of the Sentencing Guidelines, the total intended loss calculation would be $11,467,000. This would not increase defendant's base level offense.

[2] The Court needs to consider the goals of § 3553 in determining the appropriate sentence, however, the Court is not required to refer specifically to each factor listed in § 3553(a). See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005). Section 3553(C) provides that, at the time of sentencing the Court shall state the reasons for its imposition of a particular sentence. Section 3553 specifically sets out the factors to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the

from the guideline sentence -- which the United States does not urge -- § 3553 considerations show that incarceration is appropriate because of the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). Defendant's scheme was carefully planned, intentionally deceptive and carried out over a period of time. The trial evidence demonstrates that these two charged incidents were not defendant's first attempt to get something for nothing using fictitious United States Treasury obligations. The evidence showed that the defendant 1) purchased three vehicles in Maryland in 2004 using fictitious Treasury obligations; 2) attempted to negotiate a large fictitious Treasury obligation at another bank; and 3) presented another fictitious obligation as earnest money for a real estate deal. Although not presented at trial, there was a later incident after February 2006 when defendant used fictitious obligations to obtain several vehicles from a car dealership in Virginia. If defendant had not been caught and prosecuted, it is more than likely that he would have continued to attempt to produce, and pass fictitious obligations. In fact, law enforcement agents twice told defendant that presenting fictitious United States Treasury obligations was illegal, defendant repeated the same criminal conduct. In imposing a term of imprisonment, the Court should consider defendant's seeming inability to reflect upon the seriousness of the offense, and the need to deter him and others from committing similar criminal acts in the future.

Because TDFCU did not negotiate the two fictitious obligations, there is no restitution

---

public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the . . . offense . . . as set forth in the guidelines. . . (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

owed to it. Defendant's scheme to purchase real estate with funds from the fictitious obligation, however, caused the real estate agent to pay for defendant's $700.00 home inspection fee, and the United States requests that as part of any sentence, the Court order defendant to pay restitution to the real estate agent in the amount of $700.00.

        Respectfully submitted,

        JEFFERY A. TAYLOR, D.C. Bar #498610
        United States Attorney


        _/s/_____
        DIANE G. LUCAS, D.C. Bar #443610
        Assistant United States Attorney
        Judiciary Center Building
        555 4th Street, N.W.
        Washington, DC 20530
        (202) 514-7912
        Diane.Lucas@usdoj.gov