**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| **v.** | )    **Criminal No. 06-295 (TFH)** |
| | ) |
| | ) |
| **EDWARD EVERETT BROWN, JR.,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Defendant Edward Everett Brown was convicted by a jury on August 3, 2007, of one count of bank fraud and two counts of fictitious obligation. Pending before the Court is Mr. Brown's Motion for a New Trial ("Mot. New Trial.") [Dkt. #63]. Upon consideration of the motion, the Government 's opposition, the reply thereto, and the entire record in this case, the Court concludes that Mr. Brown's motion should be denied.

**Background**

On May 30, 2007, the Court granted the Government's Supplemental Motion to Introduce Evidence of the Defendant's Other Crimes and Bad Acts. [Dkt. #37]. Following Mr. Brown's conviction on August 3, 2007, he filed a timely Motion for a New Trial under Federal Rule of Criminal Procedure 33, on the grounds that "he was unduly prejudiced by the court's ruling that permitted the Government to introduce 'other crimes' evidence under FRE 404(b)." Mot. New Trial at ¶2. Mr. Brown contends that "the trial turned out to be far more about the other crimes and bad acts that the events surrounding the counts charged in the indictment." *Id.*

1

First, Mr. Brown complains about the testimony of the real estate agent who testified regarding his intention to purchase a home with the proceeds of the $5.5 million instrument he attempted to negotiate, as well as his failure to pay for the home inspection. *Id.* at ¶4. Mr. Brown argues that the evidence of this uncharged act was improperly admitted because it was not intrinsic to the charged conduct and was merely intended to show Mr. Brown's bad character. *Id.* at ¶¶4-7.¶

Second, Mr. Brown argues that evidence that he purchased three Toyotas from CarMax with instruments similar to those with which he was charged, attempted to negotiate a similar instrument with PNC Bank, and was admonished by Detective Medley for his conduct "demonstrated far more about the propensity of the defendant to utter fictitious obligations[] than about his intent." *Id.* at ¶8. Mr. Brown argues that this testimony along with that about the real estate transaction "constituted a barrage of evidence that was far more prejudicial than probative." *Id.* By "totally eviscerating any good faith defense and plac[ing] character at the forefront," the evidence cause "real" prejudice that "compromised the integrity of the trial." *Id.* at ¶10.

In opposition, the Government argues that the Court correctly ruled that the challenged evidence was probative of the key issues of Mr. Brown's knowledge and intent. Government's Opposition to Defendant's Motion for a New Trial "Opp." [dkt. #64] In addition, the Government notes, the Court gave an appropriate limiting instruction as requested by the defendant as well as a final instruction to the jury regarding its use of the "other bad acts" evidence. *Id.* at 1-2.

As for Mr. Brown's argument that the real estate transaction evidence was not intrinsic to the crimes charged, the Government argues that his objections are moot because, although the Government argued that the evidence was intrinsic, the Court admitted it as 404(b) evidence. *Id.* at 3-4.

The Government further contends that the disputed issues all related to Mr. Brown's state of mind. *Id.* at 5 ("What was the defendant's motive in passing fictitious obligations? What was the state of his knowledge when he passed the fictitious obligations? What was his intent? Did he intend to defraud the credit union of its funds? Did the defendant have a good faith belief that what he was doing was legal?"). As the Court found, evidence that Mr. Brown

> previously tried to use similar fictitious obligations to get money or property; that he had been
> successful in gaining property in exchange for the fictitious obligations; and that he had been
> told by law enforcement that the fictitious obligations were bogus and his actions in presenting
> them were illegal, were all relevant to show the defendant's state of mind and negate a good
> faith defense.

*Id.* at 5.

As for the evidence that Mr. Brown had used the instruments to purchase cars from CarMax, the Government argues that the evidence showed that: (1) the instruments Mr. Brown used looked like genuine instruments, which was an element of the fictitious obligation charges and refuted the defense's argument that no one would be fooled by the instruments; (2) Mr. Brown had the intent and motive to gain property or money using fictitious obligations; and (3) that law enforcement had told the defendant that the fictitious instruments he passed at CarMax were worthless against the law, which demonstrated his knowledge, intent to defraud, and lack of good faith in the charged acts. *Id.* at 6. Similarly, the evidence that Mr. Brown tried the same scheme at PNC Bank was relevant to show his intent, motive, and lack of mistake, refuting Mr. Brown's argument at trial that his actions were not intentional or knowing because the Treasury Department bankers did not tell him that the instruments were worthless. *Id.* at 6. Finally, evidence of the real estate transaction showed Mr. Brown's motive and scheme in pursuing funds in connection with one of the fictitious obligations with which he was charged. *Id.* at 7.

### Analysis

A motion for a new trial may be granted " if the interest of justice so requires." Fed. R. Cr.

P. 33.  "In order to grant a new trial, 'the evidence must preponderate heavily against the verdict,

such that it would be a miscarriage of justice to let the verdict stand . . . . This power should be

exercised with caution, and is invoked only in those exceptional cases in which the evidence

weighs heavily against the verdict . . . .'"  *United States v. Howard*, 245 F. Supp. 2d 24, 30

(D.D.C. 2003) (quoting *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991)).  "'A

motion for a new trial should only be granted "where the . . . government's case had been marked

by uncertainties and discrepancies.'" *Id.*

The D.C. Circuit recently reiterated that "'Rule 404(b) is a rule of inclusion rather than

exclusion.'"  *United States v  Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) (quoting *United*

*States v. Bowie*, 232 F. 3d 923, 929 (D.C. Cir. 2000).  The rule allows evidence for many

purposes, including proof of motive, intent, knowledge, identity and absence of mistake, while

"prohibiting the admission of other crimes evidence 'in but one circumstance'–for the purpose of

proving that a person's actions conformed to his character." *Id.* (quoting *United States v.*

*Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc)).  Importantly, Rule 404(b) "does not

prohibit character evidence generally, only that which lacks any purpose but proving character."

*Id.* (quoting *Bowie*, 232 F.3d at 930).

The Court rejects Mr. Brown's argument that the challenged evidence was prejudicial and

merely intended to demonstrate his bad character and find that the evidence was properly

admitted.  As an initial matter, Mr. Brown's argument that the real estate agent's testimony was

not "inextricably entwined" with the charged offenses so as to be treated as "intrinsic" and exempt

from a 404(b) analysis is misplaced.  Although the Government argued that the evidence was

4

intrinsic, the Court made no such finding and did not admit the real estate's agent as intrinsic. Instead, the Court performed a 404(b) analysis, specifically found that the evidence was probative of Mr. Brown's motive, knowledge, intent, and lack of mistake or accident, and permitted the Government to introduce the evidence under 404(b).

The evidence presented about the real estate transaction, PNC Bank transaction, and CarMax purchases was highly probative of the elements of the crimes charged. In order to support a conviction for bank fraud, the Government had to prove beyond a reasonable doubt that Mr. Brown "*knowingly* execute[d], or attempt[ed] to execute, a scheme or artifice-- (1) to *defraud* a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of *false or fraudulent* pretenses, representations, or promises." 18 U.S.C. § 1344 (emphasis added). Similarly, to support a conviction for fictitious obligation, the Government had to prove Mr. Brown's "intent to defraud," as well as his knowledge that the instrument was fictitious and his intent to represent the instrument as an "actual" security issued under the authority of the United States. 18 U.S.C. § 514.

The D.C. Circuit's recent opinion in *United States v. Douglas* is instructive on this issue:

To support a conviction for [possession with intent to distribute], the government had to prove beyond a reasonable doubt that, on November 7, 2002, Douglas (1) possessed a controlled substance; (2) knowingly and intentionally and; (3) with the specific intent to distribute that controlled substance. *See* 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). The elements of the charged crime, therefore, made both intent and knowledge matters of consequence to Douglas's case. "Intent and knowledge are also well-established non-propensity purposes for admitting evidence of prior crimes or acts." *Bowie*, 232 F.3d at 930; *see also* Fed.R.Evid. 404(b). Evidence that Douglas previously possessed and distributed crack cocaine to an undercover police officer "has a tendency to make" it "more probable," Fed.R.Evid. 401, both that he knew the nature of the substance-crack cocaine-he was charged with possessing on November 7, 2002, and that he intended to distribute it, *see Cassell*, 292 F.3d at 793 ("[I]n cases where a defendant is charged with unlawful possession of something, evidence that he

possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." (internal citations omitted)).

482 F.3d 591, 596-97.

As in *Douglas*, the elements of the charged crimes made Mr. Brown's intent and knowledge matters of consequence. As the Court previously found, the "other bad acts" evidence was probative of these issues and its probative value was not outweighed by the danger of unfair prejudice. [dkt. #37.] In addition, the Court provided a limiting instruction each time such evidence was presented and an additional instruction immediately before deliberations. It is a well-settled rule of law that the Court presumes that the jury follows instructions and has no reason to believe otherwise in this case.

Mr. Brown offers no new arguments about why the evidence was improperly admitted, nor does he show that the manner in which the evidence was ultimately presented at trial was improper or prejudicial. Mr. Brown has failed to meet his high burden to demonstrate that he is entitled to a new trial, and accordingly, his motion will be denied.

### Conclusion

For the foregoing reasons, Defendant's Motion for a New Trial will be denied. An appropriate order will accompany this memorandum opinion.


February **27**, 2008


_____
Thomas F. Hogan
Chief Judge